MARY E. DWYER, Respondent, *v.* WILLIAM DWYER, Appellant.

### April 10, 1876.

By THE COURT.—1. It is not competent, in a divorce suit, to show the general reputation of the husband or wife for good temper, or the reverse.

2. Where the ground of divorce is that the defendant offered such indignities to plaintiff as to render her condition intolerable, and the evidence shows harsh language and refusal to speak, continued for several weeks, this court will not interfere with the action of the trial court in refusing to grant a divorce.

By JUDGE BAKEWELL.—In proceedings for divorce it is not competent for the husband or wife to testify to private conversations held between themselves.

APPEAL from St. Louis Circuit Court.

*General term reversed; special term affirmed.*

*Hitchcock, Lubke & Player*, for appellant, cited: Wag. Stat. 1374, sec. 5; Moore *v.* Moore, 51 Mo. 118; Buck *v.* Ashbrook, 51 Mo. 539; Berlin *v.* Berlin, 52 Mo. 151; Hooper *v.* Hooper, 19 Mo. 355; Gillinwater *v.* Gillinwater, 28 Mo. 60; Messenger *v.* Messenger, 56 Mo. 335.

*A. J. P. Garesché* and *W. F. Rogers*, for respondent, cited: Bishop on Mar. & Div. (5th ed.) secs. 624, 644; 1 Greenl. on Ev., secs. 343, 344; Moore *v.* Moore, 51 Mo. 119; Berlin *v.* Berlin, 52 Mo. 152; Elmes *v.* Elmes, 9 Barr. 167; Lewis *v.* Lewis, 5 Mo. 278, 279; Cheatham *v.* Cheatham, 10 Mo. 298; Hooper *v.* Hooper, 19 Mo.

2

357; Kempff *v.* Kempff, 34 Mo. 212; Koffman *v.* Koffman, 43 Mo. 550; Greenl. on Ev., secs. 54, 55; O'Bryan *v.* O'Bryan, 13 Mo. 16; Wag. Stat. 1068, sec. 32; State *v.* Rogers, 36 Mo. 138.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding for divorce, commenced by the wife against the husband, under our statute. The ground alleged is that the defendant offered such indignities to plaintiff as to render her condition intolerable. The Circuit Court, at special term, on hearing, refused the decree; on appeal to general term this judgment was reversed and the cause remanded. From this judgment of general term an appeal is taken to this court.

The testimony in the case is mainly that of the husband and wife—who contradict each other. Other witnesses were called, but their testimony is unimportant. If the testimony of the wife as to private conversations between herself and her husband be excluded, there is not evidence on which to base a decree.

The court, on the hearing of the cause, admitted conversations held by the husband and wife in bed, in regard to which it is sufficient to say that it is difficult to see what stress of circumstances could justify their repetition anywhere, or induce a woman, so respectable as the plaintiff undoubtedly is, to so much as allude to them in the presence of third persons. The court also admitted, generally, all conversations held by the husband and wife when alone—to all which conversations and statements defendant objected. Plaintiff offered to prove that the character of defendant was that of a violent man, and her own character that of a submissive and amiable woman, and the court, at the objection of defendant, rejected all such evidence. Exceptions to these rulings were properly saved.

Had the cause been tried before me, and had all the testimony admitted been competent, I should have felt compelled to dismiss the bill. I do not think that it is the policy

of our law to annul the contract of marriage except for very grave reasons, proved to the entire satisfaction of the court. It is not that I do not think—taking the statements of the plaintiff to be true—such indignities were offered to her as to render her life intolerable within the meaning of the statute. On the contrary, I think that refusing to allow her to control the household in subordination to her husband, as is the custom of matrons ; refusing to speak to her, or to serve her at table ; reducing her to a menial condition, and treating her as a servant rather than as a helpmate and a wife—to say nothing of outrages in matters pertaining to the most intimate relations of husband and wife—that all these things together, and each of them in particular, as detailed in evidence of the plaintiff, constitute intolerable indignities within the meaning of the law. But the statements of the wife as to all these grievous offenses are contradicted by the husband, and the testimony left after the conflicting statements are contrasted is not sufficient to warrant a decree. It is, however, urged by counsel for plaintiff that they should have been allowed to show the amiable character of the wife and the overbearing temper of the husband, by proof of their general reputation in these respects. But this was clearly incompetent. No attempt was made directly to impeach the defendant, and to attack his statements by showing the character of the parties for good temper, or reverse, and the consequent intrinsic probability that he did use the rough language imputed to him by his wife, is what could not be allowed.

As to rough language, the plaintiff, a woman apparently of gentle manners, who before her marriage had been a housekeeper in quiet families, seems to have been quite sensitive to coarseness of speech ; and the language of her husband was, clearly, occasionally profane. He had been a river man, and used to an idiom rather energetic than elegant. His habitual language to his wife, or in her presence, was perhaps such as must be shocking to a woman quiet in

her ways and religiously disposed ; and Mrs. Dwyer appeared. to call this cursing her. But Dwyer says he never cursed her, and it is quite likely he thinks he never did ; and, with-out imputing conscious falsehood to his wife, it is quite. probable, in spite of her statements, that he never did ; and, if he did, Mrs. Dwyer ought to have been ready to put up with a rough and hasty word, if that were all. In her state of life, and in his, people generally have the sound sense to care more for actions than for words.

But I think that all the conversations between the hus-band and wife, held in private between themselves, were incompetent, and should have been kept out. This would exclude from divorce suits all these disgusting revelations of the secrets of the marriage bed. It is the policy of the law that communications between husband and wife are privi-leged. At common law, the wife can testify against the husband in case of a criminal assault committed or threatened against her person, by her husband, but beyond this she cannot go ; and the statute expressly prohibits any married woman from testifying to admissions or conversa-tions of her husband. Wag. Stat. 1374, sec. 5. In. *Moore* v. *Moore*, 51. Mo. 118, the court holds husband and wife competent witnesses against each other in a divorce suit, but not as to communications made by one to the other ; and so, in *Buck* v. *Ashbrook*, 51 Mo. 539, the wife is held incompetent as to a private conversation with her husband. Such a rule may work hardships in individual cases, but great and general public demoralization and misery, and the destruction of confidence between husband and wife, must result from the contrary rule. I am quite confident that what is good in our civilization will speedily disappear if the sanctities of home and of the marriage relation are not upheld by the law ; and I believe it to be against public policy to give to statutes, in derogation of the common law in regard to the rights and duties of husband and wife, any wider scope of interpretation than the plain letter of the

law demands. Undoubtedly, great misery often results from ill-assorted marriages; but much greater and wider-spread misery, and the total disorganization of society, will be the result of dissolving the marriage bond for incompatibility of temper and harshness of speech.

It was urged in the argument that, amongst other outrages of the husband, he had, in his answer, denied all knowledge or information, sufficient to form a belief, of an allegation in the petition that the plaintiff was pregnant of a lawfully-begotten child. I find, however, that the petition does not allege this, and the answer does not deny it. The petition says that, " as a result of said marital relations, she is in a delicate condition," and the answer denies knowledge of any such state of facts. But, if the pleader meant that plaintiff was pregnant, he should have plainly said so. " Pregnant" is a good English word that clearly expresses the idea, and, whenever it is proper to express that idea, no exception can be taken to its use. A woman may be in a delicate condition without being with child; the two things are by no means synonymous. As a matter of taste, we may think plain English the best, when such things are talked about; in the matter of pleading, however, it is necessary to be so plain that there can be no room for mistake.

This, perhaps, is one of many misapprehensions which have culminated in this alienation between two persons, doubtless useful members of society, and respected and esteemed by their associates, and who, but a few months ago, entertained for one another a sincere mutual affection and respect. As no offense against the principal duty and obligation of marriage has been committed on either side, it is, perhaps, not yet too late to suggest that there are some misfortunes which are rendered tolerable only by endurance, from which courts of justice can grant no adequate relief, and which legal advisers, so indispensable in many affairs

of life, may, though prudent, learned, and faithful, only aggravate.

But, for the reasons given, I think the judgment of general term, reversing the judgment of special term, should be reversed, and that the judgment of the special term of the Circuit Court should be affirmed. The other judges concur in reversing the judgment of general term, but do not concur in the views expressed as to the competency of the evidence.